IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FIRST CONSULTING GROUP, INC., *et al.,* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>IMPACT ADVISORS, LLC, *et al.,* )<br>)<br>Defendants. )<br>) | No. 07 C 6577<br><br>Judge James B. Zagel |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT

Andrew Smith, Peter Smith, Melanie Swenson and Impact Advisors, LLC ("Defendants") request that this Court deny the Motion for Leave to File Amended Complaint ("Motion") filed by Plaintiffs First Consulting Group, Inc. and FCG CSI, Inc. (collectively, "FCG" or "Plaintiffs") on the grounds that (1) Plaintiffs failed to meet the agreed-upon deadline to amend their complaint, (2) Plaintiffs lack the good cause required to excuse that failure as much of the information on which the Motion is based was known to Plaintiffs pre-filing, and (3) allowing the proposed amendments would result in substantial additional costs to Defendants, which is the stated, yet clearly improper, goal of Plaintiffs.

### FACTS

FCG, among other business lines, provides software consulting services to healthcare organizations. Brothers Andy Smith and Pete Smith, and Melanie Swenson ("Individual Defendants") were employed by FCG as Vice

Presidents in its health delivery services practice. The brothers resigned from FCG in early 2007 and founded Impact Advisors, the fourth defendant in this case. Impact Advisors provides advisory and strategic implementation services to healthcare providers and, as such, competes with a division of FCG's business. By way of comparison, however, in early 2007, FCG's health delivery services practice employed approximately 250 individuals; today, at its peak, Impact Advisors has 16 employees. Ms. Swenson joined Impact Advisors in April 2007.

Beginning in late 2006, FCG began implementing changes to its business in a concerted effort to reduce its workforce and its costs in preparation for its inevitable sale.[1] These changes included reducing compensation for classes of employees. Naturally, these changes had a serious impact on morale at FCG such that since early 2007, upon information and belief, nearly 50 of the 250 health delivery service employees have left FCG, including at least half of the leadership team. Many FCG employees sought employment with Impact Advisors. But to date, Impact Advisors has hired only six individuals who were employed by FCG immediately prior to their hire. Most of the employees who have left FCG are either unemployed or employed by entities other than Impact Advisors. In addition, several "Known FCG Clients," dissatisfied with the services provided by FCG and its rapidly dwindling workforce, elected to do business with Impact Advisors.

---

[1] FCG was acquired by Computer Sciences Corporation ("CSC") earlier this year.

On November 20, 2007, FCG filed a 21-page Complaint, alleging breach of contract and related claims.  FCG alleges that by hiring former FCG employees and performing work for dissatisfied FCG clients, the Individual Defendants breached certain non-solicitation agreements they had signed during their employment.

On December 18, 2007, Defendants filed their Answer.  On January 10, 2008, attorneys for the parties participated in a Rule 26(f) conference.  A copy of the report detailing that conference was filed with the court on January 22, 2008 and is attached as Exhibit "A."  Paragraph 4(c) reports the agreement of the parties that Plaintiffs would have until February 21, 2008 to join additional parties or amend the pleadings.

## Argument

Fed. R. Civ. P. 15(a)(2) provides that, after being served with a responsive pleading, a party may amend its complaint only with the other party's written consent or with leave of court.  While this leave is to be freely given, it is available only when "justice so requires."  Indeed, the right to amend is not absolute.  *See Perkins v. Silverstein*, 939 F.2d 463, 471-72 (7th Cir. 1991); *In re Ameritech Corp.*, 188 F.R.D. 280, 282 (N.D. Ill. 1999).  A court considering a motion to amend should weigh the factors set forth in *Forman v. Davis*, 371 U.S. 178 (1962) to determine whether the amendment should be permitted.  These factors include evidence of undue delay, bad faith or dilatory motive on the part of movant and undue prejudice to the opposing party.  *See id.* at 182.

"Prejudice to the opposing party is the most important factor in determining whether to allow an amendment to a complaint." *Ameritech*, 188 F.R.D. at 283. Undue prejudice may be found where the amendment brings new claims, adds new parties and radically changes the complaint, or when the additional discovery that will necessarily occur as a result of the amendment will be expensive and time consuming. *See id.* *See also Jacobs v. Xerox Corp.*, 520 F. Supp. 2d 1022, 1046-47 (N.D. Ill. 2007); *Campania Management Co., v. Rooks, Pitts & Poust*, 290 F.3d 843 (7th Cir. 2002) (denial appropriate when amendment would cause opposing party to bear additional costs litigating a new issue and moving party does not offer to reimburse nonmoving party for expenses.).

A.  Plaintiffs' Request to Amend Comes Six Weeks after the Deadline for Amendments Proposed by Plaintiffs and Agreed to By the Parties.

In support of their Motion, Plaintiffs' recite a litany of important dates, including the dates document requests were exchanged and fact and expert discovery are to close. Conspicuously absent, however, is the one date most relevant to this Motion – the deadline for allowing Plaintiffs to amend the pleadings or join additional parties. During the scheduling conference, Plaintiffs' counsel proposed February 21, 2008 as that deadline, and undersigned counsel, concerned that discovery would be well underway by that date, reluctantly agreed. Since then, Plaintiffs have made no indication that they would need an extension of time in which to amend. As a result, Defendants have served and responded to written discovery in reliance on that deadline. Now, more than one year after the Smith brothers resigned from

4

FCG, four months after the filing of the initial Complaint, six weeks after the agreed-upon deadline and as written discovery has just about concluded, Plaintiffs seek to add two new parties and file a radically different complaint. Plaintiffs chose the deadline for amendment – they should be held to it.

B.  **Much of the "New Information" Relied Upon by Plaintiffs has been in their Possession All Along.**

Plaintiffs claim that the reason for their tardy amendment request is that the "new facts" in the proposed complaint were not known until recently. This is not true. For example, Plaintiffs seek to add Stephen Egli as a defendant, claiming that they were unaware of his alleged unlawful conduct until after the deadline for amending the complaint. However, FCG knew that Egli had been hired by Impact Advisors by no later than November 2007 – indeed, he is referenced several times in their original Complaint. Moreover, FCG had no qualms about alleging breach of contract against the Individual Defendants in the original Complaint based solely on the fact that former FCG employees had been *hired*[2] by Impact Advisors. Simply put, Plaintiffs had no more or less information regarding Egli and his activities than it did about the Individual Defendants when they filed their original Complaint. The amendment process should not be used as a tactical tool for untimely correction of an initial oversight.

In addition, Plaintiffs rely on the "recent" discovery of documents and other evidence to attempt to justify their untimely claims for breach of fiduciary

---

[2]  Note that the non-solicitation provision at issue states that the employee will not "solicit, divert or take away any employee of FCG." There is no mention of "hiring."

duty against Andy and Pete Smith. For example, Exhibit "F" to the Proposed Amended Complaint contains emails allegedly recovered just recently from Andy Smith's laptop computer. However, Plaintiffs have had exclusive possession of Andy Smith's computer since at least March 2007. Thus, there is no excuse for their failure to realize that it contained data before they drafted and filed their initial Complaint. Moreover, in order for a fiduciary duty to exist, there must be some fiduciary relationship between the parties. Clearly, any such relationship between the Smith brothers and FCG ended the day they resigned their employment. That FCG suggests that the basis for this cause of action was unknown to them until just recently defies logic.

C.   Allowing Plaintiffs to Amend their Complaint would Further their Improper Plan to Use their "Deep Pockets" to "Bring [Impact Advisors] Down"

Finally, it is clear that one of the primary purposes of this request to amend is to cause Defendants to spend more money defending this lawsuit. Indeed, this is consistent with FCG's clearly expressed intent. At an industry trade show in late February 2007, Pete Smith was approached by David Hampshire, an executive at FCG/CSC. Mr. Hampshire asserted, "I want you to know that we are taking this all the way, we are devoting all our resources to this and we are going to bring you down." He further postured, "I'm telling you we have very deep pockets and we are not going to stop until this is done." This attitude is reflected in the proposed complaint. In a court in which notice pleading is the standard and the rules require "a short and plain statement of the claim," Plaintiffs seek to jettison the original 21-page Complaint in favor of

6

the Proposed Amended Complaint, which weighs in at 47 pages and 174 paragraphs, each of which contains multiple allegations, and is filled with innuendo and histrionics. To respond to this new complaint, Defendants would have to conduct a new series of interviews with six defendants. Defendants will also need to engage in written discovery for the two new Defendants and the new claims. The parties have agreed that depositions will be complete by May 30, 2008, and, at this time, Plaintiffs expect to take at least 12 depositions, while Defendants likely will take four. It will be impossible to meet this deadline if Plaintiffs are permitted to restart written discovery at this time.

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiffs Motion for Leave to File an Amended Complaint.

Respectfully Submitted,

Impact Advisors, LLC, Andrew Smith, Peter Smith and Melanie Swenson

s/ Laurie A. Holmes
Laurie A. Holmes, Esq. (ARDC #6282262)
Erik K. Eisenmann (ARDC #6292766)
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606
Attorney for Defendants

CH01/ 13504777.2